UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JATINDERVIR SINGH,

Petitioner,

v.

MARKWAYNE MULLIN, *et al.*,

Respondents.

Case No. C26-2851-SKV

ORDER GRANTING IN PART PETITION FOR WRIT OF HABEAS CORPUS

Petitioner is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. He filed, through counsel, this verified 28 U.S.C. § 2241 habeas action, challenging his January 25, 2026, redetention as unconstitutional. Dkt. 1. He seeks release from custody and injunctive relief related to any future redetention. *Id.* at 12. Respondents filed a return (Dkt. 5), together with declarations from U.S. Department of Homeland Security ("DHS") Deportation Officer Andre Ouk (Dkt. 6) and their counsel Lawrence Van Daley (Dkt. 7). Petitioner filed a traverse in reply. Dkt. 8.

Having reviewed the parties' submissions and the governing law, the Court GRANTS in part the petition (Dkt. 1) for the reasons set forth below.

## I. BACKGROUND

Petitioner is a native and citizen of India, who entered the United States on January 25, 2024, near San Ysidro, California. Ouk Decl., ¶ 4. He was encountered and detained by U.S. Border Patrol the same day for further processing. *Id.* ¶ 5. Petitioner was issued a Notice to Appear ("NTA") charging him with being inadmissible under the Immigration and Nationality Act ("INA"). *Id.* ¶ 6; *see* Van Daley Decl., ¶ 2, Ex. 1. He was thereafter released into the United States the following day on an Order of Release on Recognizance ("OREC"), which required Petitioner to comply with various conditions of release. Ouk Decl., ¶ 7; *see* Van Daley Decl., ¶ 2, Ex. 2.

After being released into the United States, Petitioner asserts he "fully complied with all conditions of his release." Dkt. 1, ¶ 26. He asserts he appeared for his immigration hearings and ICE check-ins, "maintained a stable residence in the United States, and remained actively engaged in his removal proceedings." *Id.*

On March 18, 2026, Petitioner was convicted of unlawful sale, offer for sale, or furnishing an alcohol product to a minor in West Valley, Utah. Ouk Decl., ¶ 8.

On August 4, 2026, ICE arrested and redetained Petitioner after he reported in person to the ICE office in Tukwila, Washington. Ouk Decl., ¶ 10. According to Officer Ouk, "officers conducted a case review" and "[b]ased on Petitioner's conviction, . . . determined that Petitioner violated the terms and conditions of his OREC[.]" *Id.* ¶ 10. ICE revoked Petitioner's OREC and took him into custody. *Id.* Petitioner was served with a warrant for his arrest, authorized "pursuant to sections 236 and 287 of the [INA.]" Van Daley Decl., ¶ 2, Ex. 4 at 2. ICE officials also determined, pursuant "to the authority contained in section 236 of the [INA]", that Petitioner would remain detained "pending a final administrative determination" in his immigration case.

*Id.* at 3. He was transferred to the NWIPC the same day. Ouk Decl., ¶ 11. Petitioner's immigration case was transferred to the Tacoma Immigration Court. *Id.* ¶ 12.

On August 11, 2026, Petitioner filed the instant habeas petition, challenging his redetention as violative of his due process rights under the Fifth Amendment. *See generally* Dkt. 1.

## II. LEGAL STANDARDS

District courts may grant writs of habeas corpus "within their respective jurisdictions." 28 U.S.C. § 2241(a). This authority extends to challenges to immigration detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). A petitioner may obtain relief by showing that he is "in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c). A petitioner bears the burden of proof by a preponderance of the evidence. *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

## III. DISCUSSION

Petitioner's sole claim asserts that his August 4, 2026, redetention, without first receiving notice or an opportunity to be heard, violated his due process rights under the Fifth Amendment. Dkt. 1, ¶¶ 52-55. Respondents argue in turn that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b) and that due process did not require pre-deprivation notice or an opportunity to be heard "under the specific facts of this case." Dkt. 5 at 2.

### A. Statutory Detention Authority

Petitioner does not engage with the various statutory detention schemes under the INA. *See generally* Dkt. 1. As noted, however, Respondents assert Petitioner is lawfully detained under § 1225(b). Dkt. 5 at 2-3, 6-7. To support that argument, Respondents cite *Rodriguez Vazquez v. Bostock*, 183 F.4th 1160 (9th Cir. 2026), for the proposition that § 1225(b)(2)(A)

mandates Petitioner's detention because the Ninth Circuit held that § 1225(b)(2)(A) "is best construed as applying to [noncitizens] entering the United States at the border, while 8 U.S.C. § 1226 governs inadmissible and deportable [noncitizens] already present in the interior who are first apprehended inland." Dkt. 5 at 6-7 (citation omitted). And because Petitioner "was initially encountered near the border," Respondents argue, "his original classification and processing under the 8 U.S.C. § 1225 framework" continues to mandate his detention, despite being released on an OREC shortly after his detention. *Id.* at 7.

Courts in this District have rejected this argument. *See Martinez Vidalon v. Mullin*, No. C26-2841-SKV, Dkt. 9 at 5 (W.D. Wash. Sept. 11, 2026); *see also Briones Montenegro v. Warden/Facility Adm'r, Northwest Processing Ctr.*, No. C26-2743-LK, 2026 WL 2607491, at *3-4 (W.D. Wash. Sept. 3, 2026); *Ortiz-Canales v. Blanche*, C26-2748-DGE, 2026 WL 2561542, at *2 n.4 (W.D. Wash. Aug. 31, 2026). The Court incorporates the reasoning from these cases to similarly reject the Government's argument that § 1225(b) governs, or continues to govern, a noncitizen's detention solely based on the fact they were initially detained at the border upon their arrival to the United States.

Further, the Government's recent treatment of Petitioner also supports finding § 1226 governs his detention. As noted, the August 4, 2026, warrant and custody redetermination forms were both issued in accordance with section 236 of the INA, which is codified at 8 U.S.C. § 1226. Respondents do not acknowledge or explain why ICE utilized procedural mechanisms authorized under the discretionary detention scheme of § 1226 or why § 1225(b) should nevertheless govern. *See generally* Dkt. 5.

For these reasons, the Court finds Petitioner is subject to discretionary detention under § 1226(a). To the extent Respondents contend § 1225(b) permitted ICE to redetain Petitioner

without pre-deprivation process or otherwise satisfied due process, the Court rejects that argument.

**B. *Mathews* and Due Process**

Due process rights extend "to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693. "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' . . . interests within the meaning of the Due Process Clause of the Fifth . . . Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).

The *Mathews* test balances three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335.

Courts in this District apply the *Mathews* framework in cases challenging the lawfulness of a noncitizen's redetention. *See, e.g., E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1321 n.4 (W.D. Wash. 2025) (collecting cases). Both parties apply the *Mathews* framework to Petitioner's redetention but reach opposite conclusions. *Compare* Dkt. 1, ¶¶ 44-49, *with* Dkt. 5 at 7-10.

/ / /

1. *Petitioner had a liberty interest in remaining free.*

Respondents acknowledge that Petitioner possessed a liberty interest in continued release. *See* Dkt. 5 at 8. Respondents emphasize, however, that Petitioner's interest was a "conditional, time-limited liberty interest rather than an unqualified right to remain at large." *Id.* The Court does not interpret Petitioner to be asserting an unqualified right to remain free, but rather the right to pre-deprivation process. *See* Dkt. 1, ¶¶ 53-54. When Petitioner was released on his recognizance in 2024, he took with him a liberty interest protected by the due process clause. *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025). The fact that he was subject to conditions of release "does not eliminate the protections afforded" to that interest. *E.A. T.-B.*, 795 F. Supp. 3d at 1321-22. The Court therefore finds that the first *Mathews* factor favors Petitioner.

2. *There was a high risk of erroneous deprivation.*

Respondents contend that the risk of erroneously depriving Petitioner's liberty interest was low because ICE "possessed concrete, contemporaneous evidence of a Class B misdemeanor conviction . . . that was entered by a state court after Petitioner was afforded the full panoply of criminal process." Dkt. 5 at 9.

When the Government released Petitioner in 2024, the releasing officer must have first found that Petitioner's release "would not [have] pose[d] a danger to property or persons, and that [he was] likely to appear for any future proceeding." *See* 8 C.F.R. § 236.1(c)(8). The unilateral decision to then revoke that release without first reconsidering flight risk or danger comes with a high risk of erroneous deprivation. *See, e.g., E.A. T.-B.*, 795 F. Supp. 3d at 1323 (collecting cases). A criminal conviction, standing alone, does not negate that risk—particularly when, as here, there is no evidence Respondents acted on Petitioner's conviction until Petitioner

arrived for a pre-scheduled ICE appointment approximately five months after his conviction was entered. *See, e.g.*, *Ortiz-Canales*, 2026 WL 2561542, at * 2. This factor weighs in favor of Petitioner.

3. *The Government's interest did not justify forgoing pre-deprivation process.*

Respondents assert the Executive branch has an interest in "enforcing the immigration laws, ensuring appearance for removal proceedings, and enforcing conditions of release[.]" Dkt. 5 at 10. According to Respondents, providing a "full pre-deprivation hearing before every re-detention based on a clear condition violation would impose significant administrative burdens." *Id.* Respondents suggest the "existing regulatory framework already provides for prompt post-deprivation review through a custody redetermination hearing [under § 1226(a)] before an immigration judge[.]" *Id*. (citations omitted).

The Government certainly has an interest in enforcing immigration laws, ensuring noncitizens appear for proceedings, protecting the public, and prompt execution of removal orders, *see Demore v. Kim*, 538 U.S. 510, 518 (2003), but its interest in doing so without first providing pre-deprivation process was low. *See, e.g.*, *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) ("If the government wishes to re-arrest Ortega at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low."). Here, there is no evidence Petitioner posed a risk of flight or danger to the community or that Petitioner's conviction required his arrest or redetention. And as for the purported procedural safeguards under § 1226(a), the Court reiterates that Respondents' primary position is that § 1225(b) mandates Petitioner's detention. Thus, even if a post-deprivation bond hearing under § 1226(a) was sufficient to remedy an erroneous deprivation of liberty (which it is not), *see E.A. T.-B*, 795 F. Supp. 3d at 1324, a person cannot avail oneself of such protections if he is the only

person who thinks they apply. The Court has no reason to believe Respondents' position would be any different at a bond hearing before an immigration judge than it is here. Under these circumstances, the Court cannot conclude that providing pre-deprivation process would have undermined any asserted governmental interest such that excusing such process was justified.

In sum, the *Mathews* factors favor Petitioner. Given the liberty interest at stake, the high risk of erroneous deprivation, and the governmental interest alleged, "providing effectively no pre-detention process to Petitioner[] here was constitutionally deficient." *Aucatoma v. Hernandez*, 2026 WL 1265541, at *8 (W.D. Wash. May 8, 2026); *see also Subham v. Noem*, 2026 WL 497101, at *4 (W.D. Wash. Feb. 23, 2026). Habeas relief, and specifically release from immigration custody, is the appropriate and constitutionally required remedy. *See Aucatoma*, 2026 WL 1265541, at *8 (and the cases cited therein).

Respondents contend that, should the Court grant relief, the appropriate remedy is a bond hearing. *See* Dkt. 5 at 11-12 (and the cases cited therein). The cases relied upon by Respondents are distinguishable. The petitioners in *Maliwat v. Scott*, 2026 WL 2256711 (W.D. Wash. Aug. 7, 2025), *Dovlatov v. Hernandez*, 2026 WL 1030454 (W.D. Wash. Apr. 16, 2026), and *Hong v. Mayorkas*, 2022 WL 1078627 (W.D. Wash. Apr. 11, 2022), challenged their prolonged detentions under § 1225(b). The petitioners in *Juarez v. Wolf*, 2021 WL 2322823 (W.D. Wash. June 7, 2021), *Pasillas v. ICE Field Off. Dir.*, 2021 WL 8084206 (W.D. Wash. Oct. 18, 2021), *report and recommendation adopted,* 2022 WL 1127715 (W.D. Wash. Apr. 15, 2022), and *Populus-Revuelta v. Scott*, 2026 WL 1067317 (W.D. Wash. Apr. 20, 2026), were detained under § 1226(c), a statute not at issue here. The petitioner in *Balwan* challenged his detention without a bond hearing as violative of § 1226(a). *Balwan v. Bondi*, 2026 WL 497098, at *3 (W.D. Wash. Feb. 23, 2026).

Those cases thus involve claims arising under the applicable statutory detention authority, § 1225(b), § 1226(a), or § 1226(c), rather than a Fifth Amendment due process challenge to the circumstances of the noncitizen's *redetention*. A post-deprivation hearing "occur[s] after the fact" and "cannot prevent an erroneous deprivation of liberty." *See, e.g.*, *E.A. -T.B.*, 795 F. Supp. 3d at 1324; *Ledesma Gonzalez v. Bostock*, 808 F. Supp. 3d 1189, 1204 (W.D. Wash. 2025). Accordingly, the Court finds that restoring Petitioner to the status held prior to the erroneous deprivation is the appropriate remedy.

### C. Injunctive Relief

Petitioner also seeks to "permanently enjoin his re-detention during the pendency of his removal proceedings absent written notice and a hearing prior to re-detention where Respondents must prove by clear and convincing evidence that Petitioner is a flight risk or a danger to the community and that no alternatives to detention would mitigate those risks." Dkt. 1 at 12. Petitioner does not develop a factual record or provide legal authority to support his request. *See generally* Dkts. 1, 8. His request is therefore denied.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS in part the habeas petition (Dkt. 1) and ORDERS that Petitioner be RELEASED from immigration detention within 24 hours on conditions consistent with those in place at the time of his redetention. Respondents shall file a notice with the Court within 48 hours that Petitioner has been released. Petitioner's remaining request for injunctive relief is DENIED. Finally, any fee petition shall be filed within the

/ / /

/ / /

/ / /

deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412.

Dated this 15th day of September, 2026.

S. KATE VAUGHAN
United States Magistrate Judge